UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

RONALD CHAD ALLEN, Plaintiff,

v.  Civil Action No. 3:17-cv-211-DJH-CHL

EQUIFAX INFORMATION SERVICES,
LLC, et al., Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronald Chad Allen alleges various violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* The claims arise from Allen's discovery that several debts that had been discharged in his Chapter 7 bankruptcy were still appearing on his consumer credit reports. (Docket No. 1, PageID # 3) Defendant Credit One Bank, N.A. moves to partially stay this action and compel arbitration pursuant to an alleged arbitration agreement between Allen and Credit One. (D.N. 21) For the reasons set forth below, the Court will grant Credit One's motion and stay this action as to Allen's claims against Credit One.

### I. Background

In May 2016, Allen completed an application for a credit card on Credit One's website, which stated the terms and conditions applicable to the credit card. (D.N. 21-2, PageID # 73) Thereafter, Credit One mailed Allen the credit card, along with the Cardholder Agreement, Disclosure Statement and Arbitration Agreement. (*Id.*, PageID # 74) Allen eventually activated his card and began making charges to it. (*Id.*, PageID # 76)

In October 2016, Allen filed for Chapter 7 bankruptcy. (D.N. 1, PageID # 3) As a result of the bankruptcy proceedings, several of Allen's debts were discharged, including a debt he

1

owed to Credit One stemming from his use of its credit card. (*Id*., PageID # 3–4) Thereafter, Allen began regularly monitoring his consumer credit reports. (*Id*., PageID # 3) In doing so, he discovered several debts on his credit reports that had been included and discharged in his Chapter 7 bankruptcy. (*Id*.) One such debt was the balance he previously owed to Credit One. (*Id*., PageID # 3–4)

Allen asked credit-reporting agency Equifax Information Services, LLC to investigate the inaccuracies. (*Id*., PageID # 4) In the present lawsuit, Allen claims that upon receiving notice from Equifax of Allen's dispute, the defendants failed to conduct a reasonable investigation concerning the misreported debts, in violation of various provisions of the FCRA and FDCPA. (*Id*., PageID # 4–9) Originally named as defendants were Equifax Information Services; Credit Bureau Systems, Inc.; Credit One Bank, N.A.; Fort Knox Federal Credit Union; and Hillcrest Credit Agency. (*Id*.) Allen has since voluntarily dismissed his claims against Hillcrest Credit Agency (D.N. 22; D.N. 24) and settled his claims against Equifax Information Services. (D.N. 26) Credit One moves to partially stay the action and compel arbitration in accordance with an arbitration agreement that Allen allegedly entered into when he began using the credit card at issue. (D.N. 21-2, PageID # 72) In his response to Credit One's motion, Allen does not argue that the agreement is generally unenforceable or that his claims fall outside its scope. (*See* D.N. 23) Instead, Allen argues that the discharge of the debt at issue in Allen's Chapter 7 bankruptcy renders the arbitration agreement unenforceable. (*Id*., PageID # 131–33)

## II. Discussion

Although Allen does not challenge the general enforceability of the arbitration agreement, precedent mandates that the Court conduct such an inquiry. The Sixth Circuit has instructed that "[b]efore compelling an unwilling party to arbitrate, the court must engage in a

2

limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). Specifically, the Court considers four factors when evaluating a motion to compel arbitration under the Federal Arbitration Act:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). "It is well-established that any doubts regarding arbitrability should be resolved in favor of arbitration." *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

**A. Agreement to Arbitrate**

The Court must first determine whether Allen and Credit One entered into an agreement to arbitrate. "State contract law . . . governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003) (citations omitted). Under Kentucky law,

> [w]hile there is no question "that the party seeking to enforce an agreement has the burden of establishing its existence, . . . once prima facie evidence of the agreement has been presented, the burden shifts to the party seeking to avoid the agreement." A party "me[ets] the prima facie burden by providing copies of [a] written and signed agreement[ ] to arbitrate."

*MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013) (alterations and omission in original) (internal citation omitted) (quoting *Louisville Peterbilt, Inc.*

*v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004)). The party seeking to avoid arbitration bears "a heavy burden" "to prove there is no agreement." *Id.* (quoting *Louisville Peterbilt*, 132 S.W.3d at 857).

Allen fails to meet that burden here. Credit One offers ample evidence showing that Allen entered into an arbitration agreement when he began using the credit card at issue. First, when Allen completed his application for the credit card, he was presented with the terms and conditions applicable to the credit card. Credit One has attached a sample copy of the application that Allen viewed on its website, which states:

> **ARBITRATION**: You agree that either you or we may, without the other's consent, require that any dispute between you and us be submitted to mandatory, binding arbitration. Complete details will be in the Agreement sent with your card.

(D.N. 21-4, PageID # 91) The application further states:

> If I am approved, my card(s) will be issued and I agree to pay all charges incurred in accordance with the terms and conditions of the Cardholder Agreement, Disclosure Statement and **Arbitration Agreement** ("Agreement"), which will be sent with my card. I understand that my Account will be subject to the terms and conditions of the Agreement.

(*Id.*, PageID # 90–91 (emphasis added)) After Allen completed the application, Credit One mailed him a credit card, alongside the Cardholder Agreement, Disclosure Agreement and Arbitration Agreement. (D.N. 21-2, PageID # 74) The Cardholder Agreement provides:

> **ARBITRATION AGREEMENT**: The Arbitration Agreement provided by you with this Agreement governs the enforcement by you and us of your and our legal rights under this Agreement.

(D.N. 21-6, PageID # 102) The Arbitration Agreement provides:

> **Agreement to Arbitrate**: You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration.

(*Id.*, PageID # 103) The Arbitration Agreement explicitly provides that claims related to "credit reporting" qualify as claims subject to arbitration. (*Id.*)

4

After receiving the credit card and Agreements, Allen began making charges to the credit card and payments on the account. (*See* D.N. 21-7) Credit One accordingly argues that "[p]ursuant to the Cardholder Agreement, [Allen] agreed to the credit card account terms and conditions, including arbitration, by requesting and receiving, signing, [and] using his credit card." (D.N. 21-2, PageID # 78) The Court agrees. "Under Kentucky law, parties can be bound to contracts, even absent a signature, when their actions indicate acceptance of the contract's terms." *Polly v. Affiliated Computer Servs.*, No. 10-135-ART, 2011 WL 93715, at *4 (E.D. Ky. Jan. 11, 2011) (citing *Sweeney v. Theobald*, 128 S.W.3d 498, 501 (Ky. Ct. App. 2004)). In Kentucky, acceptance is a "manifestation of assent to the terms [of an offer] made by the offeree in a manner invited or required by the offer." *Ky. Emps. Ret. Sys. v. Seven Ctys. Servs. Inc.*, 550 B.R. 741, 761 (W.D. Ky. 2016).

Here, the first paragraph to the Cardholder Agreement, Disclosure Statement and Arbitration Agreement clearly states that "[b]y requesting and receiving, signing or using your Card, you agree [to the following terms]." (D.N. 21-6, PageID # 99) When presented with identical language, the Court has held that under Kentucky law, a cardholder's use of a card is a manifestation of assent to the terms of the agreement. *See Holland v. Lvnv Funding, LLC*, No. 5:16-CV-00069, 2016 WL 6156187, at *10 (W.D. Ky. Oct. 21, 2016) (finding that the plaintiff was bound by an arbitration provision where the cardholder agreement provided that by using his credit card, the plaintiff accepted the agreement's terms). Moreover, as the party resisting arbitration, Allen bears the burden of showing a genuine dispute of material fact regarding the enforceability of the Arbitration Agreement. *See Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Allen presents no arguments to rebut Credit One's prima facie showing that Allen accepted the terms and conditions of the credit card. (*See* D.N. 23) Accordingly, the

Court finds that by signing up for and using a Credit One credit card, Allen accepted the Arbitration Agreement.

**B. Scope of Arbitration Agreement**

The Court must next determine whether Allen's claims fall within the scope of the Arbitration Agreement. "The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). As such, "parties should, absent the most extenuating and explicit of circumstance, be required to arbitrate those disputes which they agree to arbitrate." *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 939 (6th Cir. 1998). As the party seeking to avoid arbitration, Allen bears the burden of showing that the Arbitration Agreement does not cover this dispute. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000).

Here, the Agreement specifically states that arbitrable claims include claims related to "credit reporting." (D.N. 21-6, PageID # 103) In his complaint, Allen alleges that Credit One failed to conduct a reasonable investigation concerning a misreported debt on his credit reports. (D.N. 1, PageID # 7) Such a claim is related to "credit reporting."[1] Thus, the Agreement itself, by explicitly listing claims related to "credit reporting" as claims subject to arbitration, is prima facie evidence that Allen's claims are covered. Allen presents no arguments to rebut this prima facie showing. Accordingly, the Court finds that Allen's FCRA claim falls within the scope of the Arbitration Agreement.

**C. Congressional Intent to Exclude Claims**

Next, because Allen alleges that Credit One violated a federal statute (i.e., the FCRA), the Court must determine whether Congress intended to exclude Allen's claims from the FAA.

---

[1] Any doubt as to this conclusion is firmly mitigated by the simple fact that Allen brings his claim pursuant to the Fair Credit Reporting Act. (*See* D.N. 1, PageID # 7)

As this Court recently noted, "[t]here is no indication that Congress intended to preclude the arbitration of FCRA claims and courts have held that such claims are arbitrable." *McMahan v. Byrider Sales of Ind. S, LLC*, No. 3:17-CV-00064-GNS, 2017 WL 4077013, at *4 (W.D. Ky. Sept. 14, 2017) (citing *Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1065–66 (E.D. Ky. 2015); *Anglin v. Tower Loan of Miss., Inc.*, 635 F. Supp. 2d 523, 527 (S.D. Miss. 2009); *Liedtke v. Frank*, 437 F. Supp. 2d 696, 700 (N.D. Ohio 2006)). The Court thus concludes that there is no congressional intent to exclude Allen's claims from arbitration.

**D. Effect of Bankruptcy Discharge**

Finally, the Court will address Allen's only substantial argument. In his response to Credit One's motion to compel arbitration, Allen argues that the bankruptcy discharge of his debt to Credit One renders the Arbitration Agreement unenforceable. (D.N. 23, PageID # 131–33) Allen relies on three cases to support his position: (i) *Jernstad v. Green Tree Servicing, LLC*, No. 11 C 7974, 2012 WL 8169889 (N.D. Ill. Aug. 2, 2012); (ii) *Harrier v. Verizon Wireless Pers. Commc'ns. LP*, 903 F. Supp. 2d 1281 (M.D. Fla. 2012); and (iii) *Green Tree Servicing, L.L.C. v. Fisher*, 162 P.3d 944 (Okla. Civ. App. 2007).

Credit One does not dispute that the relevant debt was discharged in Allen's Chapter 7 bankruptcy; instead, it maintains that Allen is mistaken as to the law on this issue. (*See* D.N. 25) In *In re Madaj*, 149 F.3d 467, 469 (6th Cir. 1998), the Sixth Circuit noted that a discharge under Chapter 7 discharges every prepetition debt, regardless of whether a proof of claim has been filed. The Court therefore agrees that the relevant debt was discharged. The Court also agrees with Credit One's main contention. The *McMahan* opinion, from this district, addressed a similar issue. There, the plaintiff opposed the enforceability of the arbitration provision at issue on the basis of a previous bankruptcy discharge of the underlying debt. 2017 WL 4077013, at

*4. The Court found that "[w]hile the personal liability for the underlying debt is discharged, the discharge does not necessarily terminate the contract." *Id*. In light of this finding and the fact that the arbitration provision at issue stated that it would "survive and continue in full force and effect notwithstanding . . . discharge in bankruptcy," the Court found that the arbitration provision survived the bankruptcy discharge. *Id*.

In reaching its holding in *McMahan*, the Court also relied on *Mann v. Equifax Information Services, LLC*, No. 12–cv–14097, 2013 WL 3814257 (E.D. Mich. July 22, 2013). There, the court held that "the mere fact that [the plaintiff] was granted a discharge of the debt owed to [the defendant] does not mean that the Arbitration Agreement executed in connection with the Contract cannot be enforced with respect to their future disputes which are otherwise covered by that Agreement." *Id*. at *9. Instead, "[t]he relevant inquiry . . . [is] whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code." *Id*. at *8 (quoting *In re Eber*, 687 F.3d 1123, 1129 (9th Cir. 2012) (internal quotations omitted)). On this basis, the court distinguished *Jernstad*, since "the debtor's claim in *Jernstad* arose directly out of the bank's attempt to collect a discharged debt"—something the plaintiff in *Mann* did not accuse the defendant of doing.[2] *Id*. Because a discharge "operates as an injunction against the commencement or continuation of an action [to collect the debt]," 11 U.S.C. § 524(a)(2), the *Jernstad* court rightfully reasoned that enforcing the arbitration provision would have conflicted with the goals of the Bankruptcy Code. *See* 2012 WL 8169889, at *6. The court in *Mann* reasoned, however, that there was no conflict between the Bankruptcy Code's purposes and enforcing the Arbitration Agreement with respect to the plaintiff's post-discharge FCRA

---

[2] The *Mann* court's distinguishing of *Jernstad* is equally applicable to the remaining cases Allen cites, as attempts to collect a discharged debt were at issue in both *Harrier* and *Green Tree*. *See* 903 F. Supp. 2d 1281; 162 P.3d 944.

8

action against the defendant. 2013 WL 3814257, at *8; *see also Jenkins v. Fifth Third Bank*, No. 1:16-cv-976, 2017 WL 3605357, at *5 (S.D. Ohio Aug. 22, 2017) (finding that in light of *Mann*, "referring [the plaintiff's FCRA] claim to arbitration [would] not impose any financial liability on the [p]laintiff, interfere with his 'fresh start' guaranteed by the discharge, nor otherwise conflict with the purposes of the Bankruptcy Code").

The Court agrees with the reasoning adopted in *McMahan*, *Jenkins*, and *Mann*. Allen brings an FCRA claim against Credit One. Submitting this claim to arbitration will not interfere with Allen's "fresh start" or otherwise conflict with the purposes of the Bankruptcy Code. Additionally, as in *McMahan*, the Arbitration Agreement here contains an explicit severability provision providing that the Agreement shall survive the bankruptcy of either party. (D.N. 21-6, PageID # 104)

Perhaps seeing the writing on the wall, Allen argues that "by furnishing negative credit information about Mr. Allen, Credit One was attempting to collect a debt from [him]." (D.N. 23, PageID # 132) Credit One's actions, however, are not the sort of explicit attempt to collect a discharged debt that were at issue in *Jernstad*. Rather, Allen alleges that Credit One maintained a discharged debt on his credit report—the exact claim at issue in *Mann*. *See* 2013 WL 3814257, at *1. The Court therefore finds in accordance with *McMahan*, *Jenkins*, and *Mann* that the discharge in bankruptcy of Allen's debt to Credit One does not affect the enforceability of the Arbitration Agreement. Allen is bound by its terms.

**E. Stay**

Credit One additionally asks that Allen's claims be stayed pending arbitration. (*See* D.N. 21-2, PageID # 80) The FAA provides that "on application of one of the parties," the Court must stay an action subject to arbitration "until such arbitration has been had in accordance with the

9

terms of the agreement." 9 U.S.C. § 3. Allen's FCRA claims against Credit One will therefore be stayed pending arbitration.

### III. Conclusion

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Credit One's motion to compel arbitration (D.N. 21) is **GRANTED**. Allen and Credit One are **COMPELLED** to arbitrate pursuant to the terms of the Arbitration Agreement (D.N. 21-6) the claims asserted by Allen against Credit One in this action.

(2) Pursuant to 9 U.S.C. § 3, this proceeding is **PARTIALLY STAYED** as to Allen's claims against Credit One pending conclusion of the parties' arbitration, at which time the Court will decide whether to enter judgment approving any arbitral award.

(3) Allen and Credit One shall submit a joint status report every **ninety (90) days** from the date of entry of this Order until the conclusion of the arbitration. The parties shall promptly report on the resolution of the arbitration or of any settlement.

(4) This case shall remain on the Court's active docket for resolution of Allen's remaining claims against Credit Bureau Systems, Inc., and Fort Knox Federal Credit Union.

November 28, 2017

**David J. Hale, Judge**
**United States District Court**